Charles LEDFORD, a minor, by John A. Watson, his guardian ad litem, Plaintiff and Appellant,

v.

Charles KLEIN, Defendant and Respondent.

No. 7713.

Supreme Court of North Dakota.

Dec. 20, 1957.

Rehearing Denied Jan. 17, 1958.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for appellant.

Nilles, Oehlert & Nilles, Fargo, for respondent.

JOHNSON, Judge.

This is an action brought on behalf of the plaintiff, Charles Ledford, a minor, by his guardian ad litem, John A. Watson, for damages resulting from an accident on Highway No. 10, about thirty-two miles west of Fargo at about 2:00 p. m. August 22, 1956. The plaintiff is a sailor, who at the time of the accident was 20 years of age. He was picked up and given a ride by the defendant, either at Mullan, Idaho, or Three Forks, Montana, on August 21, 1956.

Plaintiff bases his action on the defendant's alleged negligence, gross negligence, and the reckless manner in which the defendant handled his automobile at the time of the accident. In addition thereto, he charges the defendant with willful misconduct proximately causing the accident resulting in the injuries to the plaintiff, and maintains that such willful misconduct arises out of the fact that the defendant was without adequate sleep for over 30 hours prior to the accident.

The defendant answered denying the allegations of the plaintiff generally. He admits that the accident happened at the time alleged by the plaintiff, but specifically denies that he was negligent, careless, grossly negligent, or reckless in the operation of his automobile. He further alleges that the plaintiff was riding with him voluntarily as a guest without payment for transportation, and further that in the exercise of ordinary care, the plaintiff should have known that if the defendant was guilty of any acts of negligence, such acts of negligence were apparent to him and that he assumed the risk of any injury from such acts. The defendant also alleges that if the plaintiff suffered any damage or injury or injuries, the same were the proximate result of the plaintiff's own negligence.

This case was tried to a jury. The jury found for the defendant and dismissed the action. Judgment of dismissal was entered pursuant to the verdict on April 10, 1957. Plaintiff has appealed to this court from the judgment of dismissal.

The plaintiff's appeal is based on several alleged errors of law. The errors of which the appellant complains are set forth under

four groups. The first relates to the question of whether, under the circumstances, the plaintiff was a guest in the defendant's car at the time of the accident. The second pertains to the trial court's determination that contributory negligence is a defense to willful misconduct. The third relates to the court's instructions to the jury, and the fourth asserts that the trial court erred in limiting proof of damages for medical expenses of the plaintiff to $55.

The trial court on motion made prior to the submission of the case to the jury ruled that the plaintiff, as a matter of law, was a guest of the defendant at the time of the accident and so instructed the jury. It said:

"In this case the court instructs the jury that the plaintiff was riding with the defendant as a guest at the time of the accident."

We will now discuss the alleged errors on which the plaintiff bases his appeal in this action in the order stated.

The first question for determination is whether or not the plaintiff was a guest of the defendant at the time of the accident, so as to eliminate from consideration his liability to the plaintiff on the basis of ordinary negligence.

Our statute defines "guest" as a person who accepts a ride in any vehicle without giving compensation therefor. Section 39–1501, NDRC 1943. Section 39–1503, NDRC 1943 of the "guest law" statute relieves the owner, driver, or person responsible for the operation of a motor vehicle from liability for injury to or death of a guest unless such injury or death of a guest proximately results from intoxication, willful misconduct or gross negligence of such owner, driver, or person responsible for the operation of such vehicle. The statute does not define "gross negligence" or "willful misconduct."

The question as to who is a guest within the contemplation of our statutes, fixing the liability of the owner or operator of the motor vehicle for injury to a guest, is largely a question for determination in each individual case upon the peculiar facts thereof. Jacobs v. Nelson, 67 N.D. 27, 268 N.W. 873.

"One important element in determining whether a person is a guest within the meaning and limitations of such statutes (guest statutes) is the identity of the person or persons *advantaged by the carriage*. If, in its direct operation, it confers a benefit only on the person to whom the ride is given, and no benefits, other than such as are incidental to hospitality, companionship, or the like, upon the person extending the invitation, the passenger is a guest within the statutes; but, if his carriage tends to the promotion of mutual interests of both himself and the driver and operates for their common benefit or if it is primarily for the attainment of some objective or purpose of the operator, he is not a guest within the meaning of such enactments." 4 Blashfield, Cyclopedia of Automobile Law and Practice, Part 1, Perm.Ed., Sec. 2292, pgs. 307–310 (Emphasis supplied).

The plaintiff, a man 20 years old, a sailor in the United States Navy, obtained an 18 day leave on August 20, 1956. He wanted to see his parents and to do that within the time allowed him, had to reach Hialeah, Florida, and also stop at Chattanooga, Tennessee, and make his return within time of his leave. He tried to obtain commercial transportation, but while attempting to make arrangements therefor, obtained a ride with a motorist, an Air Force Sergeant, out of Seattle, Washington. The plaintiff claims that the Sergeant was going as far as Three Forks, Montana, and offered to give him a ride that far. The defendant, however, claims that he picked up the plaintiff at Mullan, Idaho, but whether he picked him up at Mullan, Idaho, or Three Forks, Montana, is immaterial to the issues in this action. When

the plaintiff obtained a ride with the defendant, either from Mullan, Idaho, or Three Forks, Montana, he was standing near a corner on Highway No. 10 with his bag near him and a map in his hand. As the defendant drove his car around the corner he apparently saw the plaintiff standing there and stopped his car about ten feet ahead of where the plaintiff was standing. The plaintiff got into the defendant's car and rode with him.

At Big Timber, Montana, the defendant, a man 72 years old, wanted to stop and spend the night, unless the plaintiff would do some of the driving. The defendant was on his way home, a trip of some 2,-500 miles. He had been visiting relatives and was going up to northern Michigan and from there into Canada. The plaintiff and the defendant reached Big Timber, Montana, about 6 o'clock p. m. on August 21, 1956. While at Big Timber, the defendant had new points put in his car. The plaintiff and the defendant left after the repairs had been made, probably about 9 o'clock that evening. Before leaving the defendant asserted that he was tired, and since he had stopped at Big Timber, Montana, four years previously at a good motel, he suggested to the plaintiff that they stop there. He also stated that he thought the plaintiff might not have enough money to pay for a motel, and offered to pay for it. But the plaintiff urged him to go on as he was anxious to get home. On leaving, the plaintiff took over the operation of the defendant's automobile. He drove through the night until the following day. The parties had lunch about 12 o'clock on August 22nd. After lunch the plaintiff again drove the defendant's automobile until about 1 o'clock p. m. of that day. About that time the defendant again took over the operation of his car, and the plaintiff went to sleep.

When it appeared to the defendant that the plaintiff was getting sleepy he took over the operation of his car. While he claimed that he was not tired or sleepy, apparently sleep came upon him suddenly and the last thing he remembers is that he looked at his speedometer and saw that he was going 50 to 55 miles per hour. He admits that he fell asleep and went off the road, into the ditch. The evidence shows that he drove along the ditch for about 300 feet and hit an intersection in front of Mr. Fraase's home where the accident occurred.

Some time during the journey between either Mullan, Idaho, or Three Forks, Montana, to Big Timber, the defendant had ascertained that the plaintiff had a drivers license. He had not driven for the defendant until they left Big Timber, Montana, in fact it was not until about that time that the conversation between them led to the plaintiff's operating the defendant's car.

It is clear from the evidence that the defendant was in no hurry to get to his home in northern Michigan, and that he agreed to continue the journey without rest or sleep, if the plaintiff would do part of the driving. It is further clear from the evidence that the plaintiff wanted to get home as soon as possible and requested the defendant to continue the journey without stopping, and to do so agreed to operate the defendant's car.

Plaintiff did not buy any meals for the defendant. He did not pay for any gas or oil. He did not pay for the repairs on the car made at Big Timber, Montana. Apparently both parties were satisfied with the companionship of each other and got along very agreeably. The plaintiff made no objections to riding with the defendant.

When the plaintiff again took over the operation of the defendant's car at noon on the day of the accident, both he and the defendant had been without sleep, according to the testimony, for 31 hours. However, the defendant states that he rested during the night while the plaintiff operated his car. When the defendant again took over the operation of his car, at about 1 o'clock in the afternoon of August 22,

1956, plaintiff testified that the defendant looked fresh and awake. At any rate, plaintiff must have had confidence in the defendant's ability to control and manage his car as he went to sleep and was asleep at the time of the accident. The defendant felt that he could drive to Fargo, North Dakota, before stopping.

In the case of Albrecht **v.** Safeway Stores, 159 Or. 331, 80 P.2d 62, 66, the court said:

"Under ordinary circumstances the status of a guest would not be changed merely by reason of the fact that such person, at the request of the operator of a motor vehicle, did part of the driving. Such benefit would be too trivial or inconsequential to change the relationship of the parties. Sullivan v. Harris, [224 Iowa 345] 276 N.W. 88."

■ Without attempting here to review the many decisions on this question, the great weight of authority is to the effect that even the sharing of cost of gasoline and oil consumed on a trip, when that trip is taken for pleasure or social purpose, is nothing more than the exchange of social amenities, and does not transform into a passenger one who without such exchange would be a guest, and consequently is not payment for the transportation or *compensation* within the meaning of our statute. It is obvious that if a different result were arrived at under any construction of the statute, its purposes would be defeated and its effect annulled. The relationships which will give rise to the status of a passenger must confer a benefit of a tangible nature and are limited. McCann v. Hoffman, 9 Cal.2d 279, 70 P.2d 909, 912; McMahon v. DeKraay, 70 S.D. 180, 16 N.W.2d 308, 309. See also 4 Blashfield, Cyclopedia of Automobile Law and Practice, Part 1, Perm.Ed., Sec. 2292, pgs. 312–313.

■ The term "compensation" has been held not to be limited specifically to pay-

ment in money. Compensation is not to be considered in its strict legal sense within the guest statute as the discharge in money of a sum due, but includes the acceptance of a ride for the purpose of conferring some substantial benefit on the owner. McCann v. Hoffman, supra; McMahon v. DeKraay, supra.

We will next consider whether the trial court erred in refusing and failing to grant the plaintiff's oral motion requesting that the jury be instructed that contributory negligence is not a defense to willful misconduct, and in refusing and failing to give plaintiff's requested instruction No. 8, which we will later set forth verbatim.

■ Gross negligence is generally a question of fact for the jury. Hall v. Berliner, 20 Cal.App.2d 193, 66 P.2d 721; McDaniel v. Hancock, 328 Mich. 78, 43 N.W.2d 68; In re Smoke's Estate, 157 Neb. 152, 59 N.W.2d 184. Willful misconduct is also ordinarily considered as a jury question. 4 Blashfield, Cyclopedia of Automobile Law and Practice, Part 2, Section 2771, page 357.

In chambers, out of the hearing of the jury, the plaintiff moved the court to instruct the jury that contributory negligence is not a defense to plaintiff's action based on willful misconduct. The court replied:

"I would rule to the effect that I maintain that in this case contributory negligence would be proper."

The defendant had pleaded the plaintiff's negligence as a bar to recovery. Plaintiff's requested instruction stated:

"You are instructed that if, under the evidence, you find that the defendant was guilty of willful misconduct in his operation of the vehicle causing the injury to the plaintiff, then you are instructed that contributory negligence is no defense to the plaintiff's claim."

While the court did not mark this requested instruction "refused", as provided by Section 28–1412, NDRC 1943, it did not instruct as the plaintiff requested. The court instructed in this connection as follows:

"As heretofore indicated, the defendant Charles Klein contends in this case that the plaintiff Charles Ledford was guilty of contributory negligence which bars his recovery. If you find by a fair preponderance of the evidence that the defendant was guilty of gross negligence or willful misconduct as claimed by the plaintiff in his complaint, and that he was injured and damaged as a direct and proximate result thereof, it would then be necessary for you to go a step further and inquire and determine as to whether or not the defendant has shown by fair preponderance of the evidence that the plaintiff, Charles Ledford, was himself guilty of contributory negligence, which contributed proximately to the occurrence of the accident. If you should find by a preponderance of the evidence that the plaintiff was himself guilty of contributory negligence, which contributed proximately to the occurrence of the accident, then such contributory negligence would bar any recovery against the defendant regardless of the alleged negligence of the defendant."

█ The defense of contributory negligence is not absolute in the sense that every act of negligence on the part of a plaintiff will operate to deprive him of the right to recover. For instance, if under the circumstances the acts of the defendant might be regarded as willful or wanton, it may be stated as a general rule that the defense of contributory negligence is unavailable. 5 Am.Jur., Automobiles, Wanton Negligence, Section 414, page 742. Stated another way, contributory negligence on the plaintiff's part constitutes no defense to an action based upon defendant's willful or reckless disregard of the rights of others.

In the case of Carlson v. Johnke, 57 S.D. 544, 234 N.W. 25, 26, 72 A.L.R. 1352, the court says:

"It seems to be conceded by many authors on the law of negligence that where defendant's conduct that occasioned the injury was wanton or where it indicates that degree of indifference to the rights of others which may be justly characterized as recklessness, the doctrine of contributory negligence as a defense has no application. Shearman and Redfield, Negligence (6th Ed.) Section 114a; Cooley, Torts (3rd Ed.) Vol. 2, p. 1442; 8 Minn.Law Rev., note p. 329, at p. 333; 20 R.C.L. 144, Negligence, § 118; 45 C.J. 981, 982; Huddy Auto (8th Ed.) § 480; Thompson Negligence (2d Ed.) Vol. 1, p. 247, § 266. In Cieplinski v. Severn, 269 Mass. 261, 168 N.E. 722, 723, decided in 1929, the Massachusetts court says:

" 'The current of decisions is that when the defendant's wrong is something more than mere negligence, that is, when it has the element of wilful, reckless and wanton misconduct, contributory negligence is not a defense.' "

The reason for this is, as stated by 4 Blashfield, Cyclopedia of Automobile Law and Practice, Part 2, Perm.Ed., Section 2771, pages 353–355, that although actions for willful or wanton conduct have often been treated under the head of negligence actions, an action based on such conduct is apart from an action for negligent conduct. The difference is one of kind, not merely of degree. Negligence does not have for its base either willfulness or wantonness, while misconduct which is merely negligence is never either willful or wanton. Bordonaro v. Senk, 109 Conn. 428, 147 A. 136; Schoenbacher v. Kadetsky, 290 Ill. App. 28, 7 N.E.2d 768; Connole v. East St.

Louis & Suburban Ry. Co., 340 Mo. 690, 102 S.W.2d 581 (Ill.Law); 4 Blashfield's Cyclopedia of Automobile Law and Practice, Part 2, Perm.Ed., Section 2771, page 355.

■ Under our "guest law" statute, as hereinbefore set forth, the owner, driver, or person responsible for the operation of the vehicle is not liable to a guest unless intoxication, willful misconduct or gross negligence was the proximate cause of the injury. In Rokusek v. Bertsch, 78 N.D. 420, 50 N.W.2d 657, this court defined both gross negligence and willful misconduct. The definitions set forth in that case, while they indicate that gross negligence and willful misconduct are closely akin, one is not exactly the same as the other. Gross negligence and willful misconduct are different in kind and the words descriptive of one commonly exclude the other.

■ Ordinarily the negligence of a plaintiff is not available as a defense to a charge of willful misconduct. It may become so only where the act of the plaintiff is such that it is a part of, or an inducing cause of, defendant's misconduct. Schneider v. Brecht, 6 Cal.App.2d 379, 44 P.2d 662; Reposa v. Pearce, 11 Cal.App.2d 517, 54 P.2d 475; Price v. Schroeder, 35 Cal.App.2d 700, 96 P.2d 949; Pennix v. Winton, 61 Cal.App.2d 761, 143 P.2d 940, 145 P.2d 561; Amidon v. Hebert, 93 Cal.App.2d 225, 208 P.2d 733.

While most of these cases involve some degree of intoxication, the rule announced applies to the facts in the case. In Amidon v. Hebert, supra, the plaintiff recovered judgment on the basis of the willful misconduct of the defendant for driving at excessive speed upon a wet pavement on a downhill curve. There was some evidence of drinking of intoxicating liquor but the court says that there was "no evidence that any of them (the parties) were intoxicated". [93 Cal.App.2d 225, 208 P.2d 734.] The court instructed that negligence on the part of the plaintiff "is no defense upon which a defendant may rely when the defendant is guilty of wilful misconduct", and charged that "in order to bar plaintiff's recovery, said negligence, if any, must be of such a type and character that it contributes to and becomes a part of * * * the defendant's wilful misconduct." The court in discussing the facts refers to the rule announced in the cases just cited, supra. The facts in the case at bar show that except for the plaintiff's desire to continue his journey and the defendant's sympathy and willingness to accede to his wishes, the parties would have remained overnight at Big Timber, Montana. The purpose of the all night drive of August 21st was to enable the plaintiff to get as far as possible towards his goal in the shortest time.

■ The defendant on cross examination testified that on the morning of August 22, 1956, after the plaintiff had driven the defendant's car for several hours during the night, the parties stopped at a garage someplace along Highway No. 10, for lunch (breakfast) and coffee. There was parking space near and the defendant suggested that they park for a couple of hours to get rest, but that the plaintiff wanted to go on and that they did go on without taking any rest. This evidence is uncontradicted. It was at the instigation, request and persuasion of the plaintiff that the journey was continued without rest.

If any willful misconduct was involved under the facts and circumstances presented in the case at bar, the acts of the plaintiff were of such a character that they really became a part of, and the inducing cause of, the defendant's conduct, and should not and cannot be used as a basis for recovery against him. The acts of plaintiff amount to more than mere contributory negligence. If driving continuously for 31 hours without rest or sleep constitutes willful misconduct, and we do not determine that question here, under the particular facts of this case, it is appar-

ent that the plaintiff was equally as blameworthy as the defendant, if not more so; he was equally guilty. He was an active participant in the conduct of the defendant. While he was not driving the car at the time of the accident, it was being driven because he wanted to continue the journey without taking time off for rest. He induced the defendant to continue the trip apparently beyond the physical stamina of the defendant and beyond his capacity to stay awake and alert. Both parties had become so fatigued that the plaintiff fell asleep when the defendant took over the operation of his car at 1 p. m. on August 22nd and then shortly before 2 o'clock that day the defendant suddenly fell asleep and the accident occurred.

The plaintiff as the promoter of the continuous journey based his action, in part, upon the defendant's willful misconduct. The facts show that it was the plaintiff's persuasion and his manifest desire to go on with the journey that prompted the defendant, perhaps because of kindness and sympathy, to do so. Under these circumstances the plaintiff must share any blame attached to the defendant's conduct. The plaintiff's desire to proceed continuously resulted in the defendant's fatigue and lack of ability to stay awake and to properly control his car. It is true that the defendant could have insisted upon rest, but he did not do so, although it appears that he suggested it at least twice during the journey. We, therefore, believe that the rule set forth above is applicable here.

■ Thus while the court's instruction upon this issue was erroneous, under the particular facts of this case, it is not prejudicial to the plaintiff's rights since he had become at least equally guilty with the defendant, and is not in a position to urge and use as a basis for his recovery defendant's alleged willful misconduct.

■ The plaintiff cites several other alleged errors in the instructions. Without unduly extending this opinion by a discussion of these alleged errors, we may state that we have carefully examined these instructions with reference to the alleged errors and find that the trial court charged properly upon all features of the case. The instruction on contributory negligence was correct. The definition of gross negligence, although somewhat repetitious, was not confused with willful misconduct, and while not in the exact words of the definition announced by this court, it was of the same import and was correct. The court's charge stating the purpose of the guest statute, while perhaps not necessary to an understanding of the legal principles applicable to the facts, was not prejudicial. The purpose of the statute is obvious to every intelligent man and woman. In fact its very words indicate that its purpose is to relieve the owner, driver or person responsible for the operation of a vehicle from liability or injury to or death of a guest unless the same results proximately from intoxication, willful misconduct or gross negligence. The instruction of the court in this regard was similar in content to the express purpose of the guest statute announced in Albrecht v. Safeway Stores, 159 Or. 331, 80 P.2d 62, 65; Dobbs v. Sugioka, 117 Colo. 218, 185 P.2d 784, 785.

Since the plaintiff is not entitled to any recovery and the judgment must be affirmed, it is unnecessary for us to determine whether the exclusion by the trial court of evidence with reference to his medical expenses, with the exception of $55, and the instruction on this issue was error.

The judgment of the trial court is affirmed.

GRIMSON, C. J., and SATHRE, MORRIS and BURKE, JJ., concur.

On Petition for Rehearing.

JOHNSON, Judge.

The plaintiff and appellant has filed a petition for rehearing in which he diplomat-

ically suggests three considerations upon which the appellant should be entitled to a rehearing. In that connection he suggests that this court has not considered certain portions of the evidence in the record in its determination that under the facts if any wilful misconduct was involved, the plaintiff is equally guilty with the defendant. In his attempt to establish that, he points to testimony of the plaintiff relating to an incident when the parties stopped for breakfast at what the plaintiff claims was a truck stop on the morning of the accident, and which evidence he claims contradicts evidence given by the defendant to the effect that the defendant suggested a two hour rest at a garage where parking space was available on the morning of the accident, but the plaintiff did not want to stop for rest and the journey was continued. If, as assumed, the evidence of the plaintiff refers to the same incident as that testified to by the defendant, the evidence is in conflict as to that incident. While it appears that the evidence of the parties in this connection may refer to the same incident, that is not absolutely certain. But regardless of whether or not the plaintiff and the defendant were testifying to the same incident, we cannot escape the fact that when all of the evidence in the record is considered and the inferences arising therefrom, it is abundantly clear that the long, strenuous journey undertaken by the parties across Montana and North Dakota without a stop for rest was the result of the request and the persuasion of the plaintiff. It was the plaintiff who was in a hurry and it is apparent that he negatived any suggestions that the parties stop for any length of time. If the defendant had been left to his own judgment upon the matter, it is apparent that he would have proceeded on his journey in a more leisurely manner.

The plaintiff and appellant, as a second proposition, states that this court has now engrafted upon the law of negligence in this state a new concept which he calls "contributory willful misconduct." We did not decide that the acts of the defendant amounted to willful misconduct. The determination of whether misconduct is willful is ordinarily a jury question. The jury found for the defendant. We do not know the basis upon which the jury arrived at its verdict. All we indicated in our opinion was that whatever the conduct of the defendant resulting in the accident, the plaintiff was as much, if not more to blame, for the conduct as the defendant, and under the evidence and circumstances of this case, the plaintiff was not in a position to recover.

The appellant contends that this court has exceeded its limitations in determining a disputed question of fact. The evidence clearly discloses that the conduct of the plaintiff throughout the trip with the defendant was one of anxiety to proceed as rapidly as possible. We determined that under the circumstances disclosed, as a matter of law, where the inducing cause of this hurried journey was that of the plaintiff, he was not entitled to recover.

We adhere to our decision. The petition for rehearing is denied.

GRIMSON, C. J., and SATHRE, MORRIS and BURKE, JJ., concur.